IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01382-CMA-KLM

JOSEPH SANCHEZ, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

Q'MAX SOLUTIONS,INC.,
Q'MAX AMERICA, INC.,
PATRIOT SOLIDS CONTROL, and
PATRIOT DRILLING SOLUTIONS,

    Defendants.

---

## ORDER DENYING PLAINTIFF'S MOTIONS FOR CERTIFICATION

---

This matter is before the Court on Plaintiff Joseph Sanchez's (1) Motion for Class Certification of State Law Claims (Doc. # 46); and (2) Motion for Conditional Certification of under the Fair Labor Standards Act (Doc. # 24.) For the following reasons, the Court denies both motions.

### I.     BACKGROUND

Defendants[1] own and operate oil and gas industry service companies that provide individuals to work at their client's oil and gas facilities. (Doc. # 18 at ¶ 15.) Plaintiff worked as a Consultant for Defendants for approximately three months. (*Id.* at

---

[1] Defendants in this case are Palladium Equity Partners, LLC ("Palladium"), Q'Max Solutions Inc. ("Q'Max Solutions"), Q'Max America Inc. ("Q'Max America"), Patriot Solids Control ("Patriot Solids"), and Patriot Drilling Fluids ("Patriot Drilling"). These entities are collectively referred to as "Defendants."

23.) Plaintiff alleges that, during that time, Defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; the Colorado Wage Claim Act (CWCA), Colo. Rev. Stat. § 8-4-101, et seq.; and the Colorado Minimum Wage Order by misclassifying Plaintiff and failing to pay him overtime compensation. (*Id.* at ¶¶ 38–47.) Plaintiff adds that Defendants misclassified numerous employees as non-employee consultants, contractors, or independent contractors (Consultants, collectively) and improperly paid them day rates without overtime compensation. (*Id.* at ¶ 28.) As a result, Plaintiff commenced this action seeking compensation for himself and on behalf of other allegedly misclassified and underpaid Consultants. (*Id.* at ¶ 47.) He now seeks to certify a collective class to pursue the FLSA claim and a Rule 23 class to pursue his Colorado wage claims.

## II.     FLSA CLASS

The Court first turns to Plaintiff's request to certify a collective action under the FLSA. Defendants oppose certification because, they allege, the proposed collective class was already certified in Pennsylvania and certifying the same class twice would be a waste of judicial resources. The Court agrees with Defendants.

Section 216(b) of the FLSA provides a unique procedural mechanism allowing "collective" actions for minimum wage and/or overtime violations. Such actions "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. 216(b). Unlike class actions under Rule 23, a "collective class" under the FLSA includes only those individuals who expressly opt into the class in writing. *Id.*

The Tenth Circuit has approved of the use of a two-step process for determining whether putative employees are "similarly situated" to the named plaintiff(s) for purposes of Section 216(b). *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-1105 (10th Cir. 2001). Only the first stage is applicable here. At this stage, the Court makes an initial, so-called "Notice" determination of whether the named plaintiff(s) and the proposed opt-in class are "similarly situated." *Id.* at 1102–03. This "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* at 1102.

Plaintiff seeks conditional certification of the following class:

> All individuals[2] who, during any time within the past three years, worked for some or all of the Defendants in the United States and were classified as non-employees pursuant to either any version of the attached Master Service Agreement (Exhibit C) or any similar contract.

(Doc. # 24 at 7.)

In Pennsylvania the following FLSA collective class has already been conditionally certified:

> All current and former mud engineers/drilling fluid consultants and solids control operators of the Q'Max/Patriot who were classified as independent contractors and paid a day-rate during the last three (3) years.

Plaintiff does not dispute that the Pennsylvania collective class covers the same individuals that would be included in Plaintiff's proposed collective. (Doc. # 55 at 2.) Nor does Plaintiff dispute that the Defendants are the same in both actions (despite

---

[2] According to Plaintiff, these individuals are all Consultants, hired under varying titles such as solid control technicians and mud engineers, and are all, therefore, included in the Pennsylvania collective class.

3

being named differently) and the FLSA claims are identical. (*Id.*) Instead, Plaintiff urges this Court to certify a duplicative FLSA collective class pursuant to *Yates v. Wal-Mart Stores, Inc.* 58 F. Supp. 2d 1217 (D. Colo. 1999). The circumstances present in *Yates*, however, are not applicable here. There, the Court permitted a second collective action under the FLSA brought by plaintiffs who had received notice of the first collective action but failed to timely opt in. *Id.* at 1218–19. In other words, there were no duplicative plaintiffs, but rather wholly different plaintiffs that, although notified, chose not to become involved in the first action.

Here, by contrast, Plaintiff does not allege that new or different plaintiffs will be involved or notified of this suit; instead, it appears that Plaintiff wants to notify the same plaintiffs that are presently involved in the Pennsylvania action and thereby certify a wholly duplicative collective class. Plaintiff has not presented this Court with any evidence or argument to suggest that any plaintiffs potentially covered by the proposed class in this case have not been included in the Pennsylvania action and thereby provided with a sufficient forum to litigate their claims. Under these circumstances, certifying the exact same class that has already been certified in Pennsylvania would be a waste of litigant and judicial resources and an unnecessary redundancy. The Court therefore denies Plaintiff's request.

### III. RULE 23 CLASS

The Court next addresses Plaintiff's request to certify a nationwide class under Rule 23 to bring claims alleging violations of Colorado labor laws. Defendants respond

that Plaintiff's request should be denied for lack of standing.  The Court again agrees with Defendants.

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). "Standing is an inherent prerequisite to the class certification inquiry." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Whether a plaintiff has standing is a threshold issue that "determine[s] the power of the court to entertain the suit."); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331, at *7 (D. Colo. July 14, 2011) (same).

The CWCA "applies only to workers in Colorado." *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1205–06 (D. Colo. 2015) (quoting and interpreting Colo. Rev. Stat. § 8–4–101(5) and § 8–6–101(2)).  Likewise, the Colorado Wage Order is expressly limited to workers in Colorado: "This Colorado Minimum Wage Order Number 34 regulates wages, hours, working conditions and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado." 7 Colo. Code Regs. § 1103-1:1.

Plaintiff admits that he did not work in Colorado and that he is not a resident of Colorado.  Under these circumstances, the CWCA and the Colorado Wage Order do not, therefore, apply to him.  The Plaintiff nonetheless argues that Colorado's wage laws do apply to him because his employment contract, the Master Service Agreement

5

(MSA), includes a choice-of-law provision stating that it "shall be construed and interpreted in accordance with the laws of the State of Colorado." (Doc. # 46-1 at 7.)

The Court disagrees that the MSA's choice-of-law provision renders the Colorado wage laws applicable here or confers upon Plaintiff standing to bring his Colorado claims. Plaintiff's argument conflates statutory claims that exist independent of contract with claims that arise from the agreement itself. *See, e.g., Trout v. Organizacion Mundial de Boxeo, Inc., No*. CV 16-00097 JCH/LAM, 2017 WL 3052496, at *9 (D.N.M. July 5, 2017) (concluding that although the choice-of-law clause means that Puerto Rican law governs interpretation of the parties' contract, it does not necessarily apply to Plaintiff's non-contractual statutory claim brought under the New Mexico Unfair Practices Act); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1064 (N.D. Cal. 2014) (choice-of-law provisions do not generally govern non-contractual claims); *Narayan v. EGL, Inc.*, 616 F.3d 895, 898–99 (9th Cir. 2010) (choice-of-law provisions govern claims that "rise or fall on the interpret[ation] and enforce[ment] of any contractual provision.").

Plaintiff's Colorado claims are non-contractual, i.e. they do not arise from the MSA but rather from well-established state labor laws. *See, e.g. Narayan*, 616 F.3d at 898. Colorado's wage laws are part of a statewide regulatory scheme defining the obligations of employers without regard to the substance of their contractual obligations. Although provisions in an employment contact, like the independent contractor provisions in this case, may be used as evidence to support or defeat a Colorado wage claim, those provisions do not create the basis for a cause of action under Colorado labor laws—at least not in the circumstances of this case. Simply put, Plaintiff's claim

does not arise out of the MSA; it arises out of Colorado statute and the MSA's choice-of-law provision does not, therefore, confer standing upon him.

Plaintiff's reliance upon *Levinson v. Primedia, Inc.*, Case No. 02 Civ. 2222(DAB), 2007 WL 2298406 (S.D.N.Y. Aug. 9, 2007), to support his argument is misplaced. *Levinson* dealt with a lawsuit arising under an employment contract, one that broadly stated that New York state law governed all disputes arising under that contract. The *Levinson* Court concluded that New York precedent clearly established that an agreement to apply New York law to a labor contract was "tantamount to an agreement to apply New York statutory law to disputes about [funds] owned under said contract." *Id.* at *12.

Here, as mentioned, Plaintiff's claims do not arise under the MSA. Although the MSA states that it should be "construed and interpreted in accordance with the laws of Colorado," it does not create a cause of action under Colorado's substantive labor laws. Moreover, unlike the clear state precedent in *Levinson*, Plaintiff has not presented this Court with any Tenth Circuit or Colorado precedent suggesting that a choice-of-law provision in an employment contract can render Colorado substantive labor laws applicable to an employee who worked in another state, particularly when the labor dispute does not arise under or hinge on the interpretation of any contractual provisions. *See Abdulina*, 79 F. Supp at 1206 (finding no support in the Tenth Circuit or Colorado for the position that a Colorado choice-of-law provision to a contract is tantamount to an agreement to apply Colorado's statutory laws to all disputes).

Accordingly, the Court concludes that the choice-of-law provision in the MSA does not confer upon Plaintiff, who performed no work in Colorado, standing to bring, on behalf of himself or others, non-contractual claims under Colorado's labor laws. To conclude otherwise would defeat the clear geographical limits expressed in the CWCA and the Colorado Wage Order, *id.* at 1206, and would run afoul of the well-established presumption against the extraterritorial application of state laws, *see e.g.*, *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 255 (2010); *Peerless Ins. Co. v. Clark,* 487 P.2d 574, 575 (Colo. App. 1971). *See also Cotter*, 60 F. Supp. 3d at 1064 (choice-of-law provision that selected California law as the governing law for an employment contract did not create a cause of action for out-of-state employees under California's wage and hour laws because they did not arise out of or involve interpretation of the contract and California's wage and hour laws did not extend extraterritorially).

Based on this conclusion, the Court need not address Plaintiff's arguments with respect to the Rule 23 certification requirements.

### IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's:

1. Motion for Conditional Certification of the FLSA Claim (Doc. # 24); and
2. Motion for Class Certification of State Law Claims (Doc. # 46).[3]

---

[3] In their response to Plaintiff's motion for class certification, Defendants request that this Court award them attorney's fees under Colo. Rev. Stat. § 13-17-102. The Court denies that request as improperly before the Court and unsupported. Indeed, such a request "shall not be included in a response or reply to the original motion," D.C.COLO.LCivR 7.1, and "shall be supported by affidavit," among other things, D.C.COLO.LCivR 54.3.

Moreover, pursuant to the analysis in Part III above, the Court, sua sponte, DISMISSES Plaintiff's Claim Two (Doc. # 18 at ¶¶ 41–43) and Claim Three (*Id.* at ¶¶ 45–47) for lack of standing.  *See US Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005) (courts are obliged to examine issues of standing sua sponte and to dismiss where lacking).

DATED:  February 27, 2018

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge